## GOLDBLATT ET AL. *v.* TOWN OF HEMPSTEAD.

No. 78. Argued January 15–16, 1962.—Decided May 14, 1962.

*Milton I. Newman* argued the cause for appellants. With him on the briefs were *John J. Bennett* and *Edward M. Miller.*

*William C. Mattison* argued the cause for appellee. With him on the briefs were *Richard P. Charles* and *Mario Matthew Cuomo.*

*John F. Lane* and *Jerome Powell* filed a brief for the National Crushed Stone Association, as *amicus curiae,* urging reversal.

MR. JUSTICE CLARK delivered the opinion of the Court.

The Town of Hempstead has enacted an ordinance regulating dredging and pit excavating on property within its limits. Appellants, who engaged in such operations

prior to the enactment of the ordinance, claim that it in effect prevents them from continuing their business and therefore takes their property without due process of law in violation of the Fourteenth Amendment. The trial court held that the ordinance was a valid exercise of the town's police power, 19 Misc. 2d 176, 189 N. Y. S. 2d 577, and the Appellate Division affirmed, 9 App. Div. 2d 941, 196 N. Y. S. 2d 573. The New York Court of Appeals in a divided opinion affirmed. 9 N. Y. 2d 101, 172 N. E. 2d 562. We noted probable jurisdiction, 366 U. S. 942, and having heard argument we now affirm the judgment.

Appellant Goldblatt owns a 38-acre tract within the Town of Hempstead. At the time of the present litigation appellant Builders Sand and Gravel Corporation was mining sand and gravel on this lot, a use to which the lot had been put continuously since 1927. Before the end of the first year the excavation had reached the water table leaving a water-filled crater which has been widened and deepened to the point that it is now a 20-acre lake with an average depth of 25 feet. The town has expanded around this excavation, and today within a radius of 3,500 feet there are more than 2,200· homes and four public schools with a combined enrollment of 4,500 pupils.

The present action is but one of a series of steps undertaken by the town in an effort to regulate mining excavations within its limits. A 1945 ordinance, No. 16, provided that such pits must be enclosed by a wire fence and comply with certain berm and slope requirements. Although appellants complied with this ordinance, the town sought an injunction against further excavation as being violative of a zoning ordinance. This failed because appellants were found to be "conducting a prior non-conforming use on the premises . . . ." 135 N. Y. L. J., issue 52, p. 12 (1956). The town did not appeal.

In 1958 the town amended Ordinance No. 16 to prohibit any excavating below the water table[1] and to impose an affirmative duty to refill any excavation presently below that level. The new amendment also made the berm, slope, and fence requirements more onerous.

In 1959 the town brought the present action to enjoin further mining by the appellants on the grounds that they had not complied with the ordinance, as amended, nor acquired a mining permit as required by it.[2] Appellants contended, *inter alia,* that the ordinance was unconstitutional because (1) it was not regulatory of their business but completely prohibitory and confiscated their property without compensation, (2) it deprived them of the benefit of the favorable judgment arising from the previous zoning litigation, and (3) it constituted *ex post facto* legislation. However, the trial court did not agree, and the appellants were enjoined from conducting further operations on the lot until they had obtained a permit and had complied with the new provisions of Ordinance No. 16.

Concededly the ordinance completely prohibits a beneficial use to which the property has previously been devoted. However, such a characterization does not tell us whether or not the ordinance is unconstitutional. It is an oft-repeated truism that every regulation necessarily speaks as a prohibition. If this ordinance is otherwise a valid exercise of the town's police powers, the fact that it deprives the property of its most beneficial use does not render it unconstitutional. *Walls* v. *Midland Carbon Co.,* 254 U. S. 300 (1920); *Hadacheck* v. *Sebastian,* 239 U. S.

---

[1] Specifically the ordinance provides that "[n]o excavation shall be made below two feet above the maximum ground water level at the site."

[2] Under the ordinance the town may deny a permit if the proposed excavation will violate any of the provisions of the ordinance.

394 (1915); *Reinman* v. *Little Rock,* 237 U. S. 171 (1915); *Mugler* v. *Kansas,* 123 U. S. 623 (1887); see *Laurel Hill Cemetery* v. *San Francisco,* 216 U. S. 358 (1910). As pointed out in *Mugler* v. *Kansas, supra,* at 668–669:

> "[T]he present case must be governed by principles that do not involve the power of eminent domain, in the exercise of which property may not be taken for public use without compensation. A prohibition simply upon the use of property for purposes that are declared, by valid legislation, to be injurious to the health, morals, or safety of the community, cannot, in any just sense, be deemed a taking or an appropriation of property for the public benefit. Such legislation does not disturb the owner in the control or use of his property for lawful purposes, nor restrict his right to dispose of it, but is only a declaration by the State that its use by any one, for certain forbidden purposes, is prejudicial to the public interests. . . . The power which the States have of prohibiting such use by individuals of their property as will be prejudicial to the health, the morals, or the safety of the public, is not—and, consistently with the existence and safety of organized society, cannot be—burdened with the condition that the State must compensate such individual owners for pecuniary losses they may sustain, by reason of their not being permitted, by a noxious use of their property, to inflict injury upon the community."

Nor is it of controlling significance that the "use" prohibited here is of the soil itself as opposed to a "use" upon the soil, cf. *United States* v. *Central Eureka Mining Co.,* 357 U. S. 155 (1958), or that the use prohibited is arguably not a common-law nuisance, *e. g., Reinman* v. *Little Rock, supra.*

This is not to say, however, that governmental action in the form of regulation cannot be so onerous as to constitute a taking which constitutionally requires compensation. *Pennsylvania Coal Co.* v. *Mahon,* 260 U. S. 393 (1922); see *United States* v. *Central Eureka Mining Co., supra.* There is no set formula to determine where regulation ends and taking begins. Although a comparison of values before and after is relevant, see *Pennsylvania Coal Co.* v. *Mahon, supra,* it is by no means conclusive, see *Hadacheck* v. *Sebastian, supra,* where a diminution in value from $800,000 to $60,000 was upheld. How far regulation may go before it becomes a taking we need not now decide, for there is no evidence in the present record which even remotely suggests that prohibition of further mining will reduce the value of the lot in question.[3] Indulging in the usual presumption of constitutionality, *infra,* p. 596, we find no indication that the prohibitory effect of Ordinance No. 16 is sufficient to render it an unconstitutional taking if it is otherwise a valid police regulation.

The question, therefore, narrows to whether the prohibition of further excavation below the water table is a valid exercise of the town's police power. The term "police power" connotes the time-tested conceptional limit of public encroachment upon private interests. Except for the substitution of the familiar standard of "reasonableness," this Court has generally refrained from announcing any specific criteria. The classic statement of the rule in *Lawton* v. *Steele,* 152 U. S. 133, 137 (1894), is still valid today:

"To justify the State in . . . interposing its authority in behalf of the public, it must appear, first, that

---

[3] There is a similar scarcity of evidence relative to the value of the processing machinery in the event mining operations were shut down.

the interests of the public . . . require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals."

Even this rule is not applied with strict precision, for this Court has often said that "debatable questions as to reasonableness are not for the courts but for the legislature . . . ." *E. g., Sproles* v. *Binford,* 286 U. S. 374, 388 (1932).

The ordinance in question was passed as a safety measure, and the town is attempting to uphold it on that basis. To evaluate its reasonableness we therefore need to know such things as the nature of the menace against which it will protect, the availability and effectiveness of other less drastic protective steps, and the loss which appellants will suffer from the imposition of the ordinance.

A careful examination of the record reveals a dearth of relevant evidence on these points. One fair inference arising from the evidence is that since a few holes had been burrowed under the fence surrounding the lake it might be attractive and dangerous to children. But there was no indication whether the lake as it stood was an actual danger to the public or whether deepening the lake would increase the danger. In terms of dollars or some other objective standard, there was no showing how much, if anything, the imposition of the ordinance would cost the appellants. In short, the evidence produced is clearly indecisive on the reasonableness of prohibiting further excavation below the water table.

Although one could imagine that preventing further deepening of a pond already 25 feet deep would have a *de minimis* effect on public safety, we cannot say that such a conclusion is compelled by facts of which we can take notice. Even if we could draw such a conclusion,

we would be unable to say the ordinance is unreasonable; for all we know, the ordinance may have a *de minimis* effect on appellants. Our past cases leave no doubt that appellants had the burden on "reasonableness." *E. g., Bibb* v. *Navajo Freight Lines,* 359 U. S. 520, 529 (1959) (exercise of police power is presumed to be constitutionally valid); *Salsburg* v. *Maryland,* 346 U. S. 545, 553 (1954) (the presumption of reasonableness is with the State); *United States* v. *Carolene Products Co.,* 304 U. S. 144, 154 (1938) (exercise of police power will be upheld if any state of facts either known or which could be reasonably assumed affords support for it). This burden not having been met, the prohibition of excavation on the 20-acre-lake tract must stand as a valid police regulation.

We now turn our attention to the remainder of the lot, the 18 acres surrounding the present pit which have not yet been mined or excavated. Appellants themselves contend that this area cannot be mined. They say that this surface space is necessary for the processing operations incident to mining and that no other space is obtainable. This was urged as an important factor in their contention that upholding the depth limitation of the ordinance would confiscate the entire mining utility of their property. However, we have upheld the validity of the prohibition even on that supposition. If the depth limitation in relation to deepening the existing pit is valid, it follows *a fortiori* that the limitation is constitutionally permissible as applied to prevent the creation of new pits. We also note that even if appellants were able to obtain suitable processing space the geology of the 18-acre tract would prevent any excavation. The water table, appellants admit, is too close to the ground surface to permit commercial mining in the face of the depth restrictions of the ordinance. The impossibility of further mining

makes it unnecessary for us to decide to what extent the berm and slope of such excavation could be limited by the ordinance.

Appellants' other contentions warrant only a passing word. The claim that rights acquired in previous litigation are being undermined is completely unfounded. A successful defense to the imposition of one regulation does not erect a constitutional barrier to all other regulation. The first suit was brought to enforce a zoning ordinance, while the present one is to enforce a safety ordinance. In fact no relevant issues presented here were decided in the first suit.[4] We therefore do not need to consider to what extent such issues would have come under the protective wing of due process.

Appellants also contend that the ordinance is unconstitutional because it imposes under penalty of fine and imprisonment such affirmative duties as refilling the existing excavation and the construction of a new fence. This claim is founded principally on the constitutional prohibitions against bills of attainder and *ex post facto* legislation.[5] These provisions are severable, both in nature and by express declaration, from the prohibition against further excavation. Since enforcement of these provisions was not sought in the present litigation, this Court under well-established principles will not at this time undertake to decide their constitutionality. *E. g., Ohio Tax Cases,* 232 U. S. 576, 594 (1914); cf. *United States* v. *Raines,* 362 U. S. 17 (1960). That

---

[4] Although it was adjudicated that *at that time* appellants had made substantial improvements on the lot, this fact would not be indicative of the loss appellants would *presently* suffer if the mine were closed; perhaps the improvements are commercially salable.

[5] The appellee asserts that these grounds were not properly preserved below. Due to our disposition of these arguments, it is unnecessary to reach this question.

determination must await another day. We pass only on the provisions of the ordinance here invoked, not on probabilities not now before us, and to that extent the judgment is

*Affirmed.*

MR. JUSTICE FRANKFURTER took no part in the decision of this case.

MR. JUSTICE WHITE took no part in the consideration or decision of this case.