Bernard S. Meyer, J.
Plaintiff owns property within the Village of Mill Neck which it is conceded is a buildable lot from the point of view of area. Section 500.1 (2) of the Zoning Ordinance prohibits grading of land unless a zoning permit is issued therefor in accordance with section 920. Plaintiff made application for a permit to bring in fill and raise the level of a portion of his land. The application was denied by the Board of Trustees and plaintiff’s article 78 proceeding to review that determination was dismissed on the ground that the determination had not been shown to be arbitrary and that questions concerning the validity of the ordinance could not be raised in that proceeding (Matter of Gordon v. Board of Trustees of Inc. Vil. of Mill Neck, 235 N. Y. S. 2d 592). In this declaratory judgment action plaintiff attacks the ordinance as (1) unrelated to the public health, safety and general welfare, (2) unauthorized by the enabling provisions of the Village Law, (3) pre-empted by the enactment in the Conservation Law of provisions dealing with water resources, and (4) confiscatory. Not raised by the pleadings, but argued in plaintiff’s brief, is the added point that the ordinance does not set forth sufficient standards. The answer raises the defense that plaintiff has failed to exhaust administrative remedies in that he has not appealed to the Board of Appeals,
Both the unpleaded ground of attack and the defense are, in the posture of this case, without significance. Neither party has questioned that the Board of Trustees was the proper agency to pass on the permit, though clearly plaintiff’s application was not under section 300.1 (4) of the ordinance and, therefore, not within section 920.5. The court must, therefore, deal with the matter as though the Board of Trustees were the proper agency. If so, the absence of a definition of ‘ ‘ Village Engineering Standards,” which would be fatal were the Board of Appeals the agency involved, is of no moment (Matter of Lemir Realty Corp. v. Larkin, 11 N Y 2d 20, 26; Matter of Green Point Sav. Bank v. Board of Zoning Appeals, 281 N. Y. 534, 539); and plaintiff’s failure to seek Board of Appeals review will not defeat the action (Matter of Katz v. Board of Appeals of Vil. of Kings Point, 21 A D 2d 693).
The contention that the ordinance intrudes into a field preempted by article V of the Conservation Law is based on the statement of purpose in section 500.1 (2) of the ordinance which prohibits specified uses without a permit, in order “ to conserve, enhance and protect natural assets of the community, to maintain ground water, and to prevent floods as well as encroachments on watercourses, drainage ways, lakes, ponds, shorefront *177 and tidelands. ’ ’ Pre-emption results when a superior legislative body manifests the intention to cover an entire field of activity to the exclusion of inferior legislative bodies. The only indicia of such an intent is the use of the word “ exclusively” in the declaration of policy set forth in subdivision (1) of section 401 of the Conservation Law. However, the legislative findings set forth in section 5 of the act which added article V to the Conservation Law make clear that the act does not exercise the State’s power to the exclusion of other agencies. Subdivision (i) of those findings reads as follows: “ Over the years in response to various water needs and water problems, a number of agencies have been given functions relating to water resources. There is need to coordinate more fully the present and future water resource activities of these various agencies.” Part Y of article Y relates to that co-ordination and section 441 contained therein, expressly provides that: “Nothing in Part V of this article contained shall be held to repeal, limit or modify the jurisdiction, powers and duties of any state or local department, board, district, commission or authority (Emphasis supplied.) Clearly, then, the Conservation Law does not proscribe municipal zoning legislation regulating the use of land, even though one of the purposes of such legislation be related to water resources.
Equally without support is the charge that the ordinance provision is unauthorized by the enabling act. Section 175 of the Yillage Law authorizes regulation and restriction of “ the location and use of * * * land for * * * residence or other purposes” and section 177 directs that such regulations be made “to secure safety from fire, panic, floods and other dangers; * * * to facilitate the adequate provision of * * * sewerage ”. Plaintiff’s proof establishes that the water table is at one and one-half feet in one part of the area he sought to grade and three feet at another point, and that a stable residence cannot be built nor proper sewerage be provided unless the proposed filling and grading is done. Flood conditions on plaintiff’s and neighboring properties may result from improper grading of plaintiff’s property. While an ordinance the sole purpose of which was to “protect the natural assets of the community ’ ’ might well be beyond the enabling act, this ordinance has other purposes well within it.
Plaintiff fares no better on the basis of his constitutional arguments. On him rests the heavy burden of overcoming the presumption of constitutionality. Relation to health, safety or general welfare exists in the' prevention of flooding, the protection of the water table from sewerage effluent, the protection *178 of persons using any building later erected against the building-sinking into a quagmire, the protection of adjoining lands from excessive erosion. Nor can it be said that the ordinance is confiscatory solely because the common law accords a landowner the right to improve his property without regard to damage that may be caused adjoining owners from the changed natural flow of surface waters. That right is subject to the reasonable exercise of the police power (Goldblatt v. Town of Hempstead, 369 U. S. 590, 593, affg. 9 N Y 2d 101). “ Cardinal is the principle that what is best for the body politic in the long run must prevail over the interests of particular individuals ” (Shepard v. Village of Skaneateles, 300 N. Y. 115, 118). As the Shepard case recognizes, the rights of the public and of the owner must be balanced, and the owner may neither be deprived of all beneficial use of his property nor have a special hardship unnecessarily and unreasonably imposed upon him. Of course, ‘ ‘ the construction of an ordinance as applied to a particular piece of property and a particular set of facts [may be] so arbitrary and unreasonable as to result in an invasion of property rights ” (Matter of Diocese of Rochester v. Planning Bd., 1 N Y 2d 508, 521). In the instant case, however, the ordinance is not confiscatory on its face and while plaintiff’s proof showed that without grading his property cannot be used, it did not show that he has been arbitrarily prevented from grading. Indeed, the earlier determination, from which no appeal was taken, specifically found that sufficient grounds for denial of the permit existed. If plaintiff presents a further application including therein boring information and other appropriate engineering data and is nonetheless denied a permit without clarification of the standard he is required to meet (see Matter of Greenburgh Shopping Center v. Town of Greenburgh, 21 A D 2d 692), he may have a basis for complaint that the ordinance is being so construed as to be confiscatory. In the present state of the facts he has made no such demonstration.
The complaint is dismissed.