19 N.Y.2d 739 (1967)
In the Matter of Dolomite Products Company, Inc., Appellant,
v.
Frank F. Kipers et al., Constituting the Town Board of the Town of Gates, Respondents.
Court of Appeals of the State of New York.
Argued October 24, 1966.
Reargument ordered December 30, 1966.
Decided March 2, 1967.
Charles S. Wilcox, Frederick Wiedman and James M. Hartman for appellant.
Michael A. Telesca, Town Attorney, for respondents.
Chief Judge FULD and Judges BERGAN, BREITEL and BEST[*] concur in memorandum; Judge BURKE dissents in an opinion in which Judges VAN VOORHIS and SCILEPPI concur.
*740 MEMORANDUM.
The order should be affirmed, with costs, upon the opinion at the Appellate Division. As that opinion demonstrates, the record makes it clear that the appellant carried on no quarrying operations in parcels B and C since it acquired those properties more than 40 years ago. And, contrary to the intimations in the dissenting opinion, the appellant, as the Appellate Division pointed out, offered no proof either (1) "as to the financial loss it may suffer" (23 A D 2d, p. 342); (2) or "as to the value of the land in parcels B and C which * * * are apparently good residential building lots of substantial value which can be realized by [appellant] if its operations are limited to parcel A" (23 A D 2d, p. 342); or even (3) that "the parcels in question are more valuable for quarrying than they are for sale as residential lots" (23 A D 2d, p. 343).
BURKE, J. (dissenting).
Today's holding by this court is profoundly disturbing. Under the impression that it ushers in a new day for "sound, wise and adequate municipal planning," the court sanctions an unconstitutional confiscation of petitioner's property, under the authority of a zoning ordinance enacted only after petitioner had already established its nonconforming use of the property in question. It allows the destruction of petitioner's business, representing an investment of over two million dollars, with annual gross sales over one million dollars, in the name of the vaguest notions of public welfare. In the face of petitioner's demonstrated willingness to submit to reasonable regulation and with not the slightest showing of any hazard to public health or welfare, the court places its imprimatur upon a zoning ordinance enacted in desperate haste by the Town Board of Gates in a last ditch effort to prevent petitioner's continued use of its property for the purposes to which it has been devoted for the last 35 years.
The record reveals that petitioner in 1925 purchased and by a single conveyance took title to this 82-acre parcel (the Bonnett Farm) in the Town of Gates for quarrying purposes. The parcel is bisected by a railroad right of way, with 35 acres north of the right of way and 47 south, but petitioner has a farm crossing across the tracks and since its purchase of the property has utilized land and improvements on both sides of the right of way in connection with its quarrying operations, although commercial *741 extraction of rock has so far taken place only to the north of the tracks. In 1948 the town adopted a zoning ordinance under which the southernmost portion of the parcel (a 175-foot strip, herein referred to as "Parcel C") was designated for residential use and the remainder of the property south of the tracks (Parcel B) was zoned "Industrial E", a classification allowing use of the land for quarrying. The land north of the tracks (Parcel A) was likewise designated "Industrial E". These classifications remained in effect until early 1963, when, in response to the initiation of certain activities preparatory to quarrying upon Parcel B by petitioner, the town amended its zoning ordinance to prohibit all quarrying south of the railroad. This amended ordinance did not become effective until after petitioner had (1) maintained on that part of the Bonnett Farm now designated Parcel C for as long as it owned the property a dynamite magazine used in connection with its quarrying operations, (2) taken numerous test borings south of the tracks, (3) begun stripping topsoil in Parcel B in preparation for blasting rock, and (4) commenced construction of a berm on the southeast corner of the property to shield from its operations the few residences anywhere near enough to be affected. This ordinance was adopted, apparently, only after the Town Board realized that it had no legal basis for denying petitioner the excavation permit it was entitled to under the town's 1950 excavation ordinance and the 1948 zoning ordinance.
The majority opinion in the Appellate Division, upon which the court today relies, treats New York Trap Rock Corp. v. Town of Clarkstown (3 N Y 2d 844) as dispositive of the case, though this conclusion is premised upon its inaccurate characterization of Trap Rock as "quite analogous to the case at bar." Such a comparison is incorrect, for in Trap Rock it was conceded by the property owner that there was no prior nonconforming use of the parcel in question. Its contention was that, because of the quarrying carried on by the common owner on an earlier purchased, larger parcel across the road from the parcel in question, it should have been allowed to "tack" the smaller parcel onto the larger for purposes of establishing a nonconforming use. This is far different from the instant case, wherein petitioner's activities over its entire property have established its use of the single tract for quarrying purposes. We reject the notion that, because a railroad right of way crosses the *742 property and because various parts of the property have received different zoning treatment, it somehow became three separate parcels. The land was purchased and has been used as a single entity for as long as plaintiff has held title to it. Petitioner has not extracted rock from its entire area, but this is not the way quarrying operations are conducted. As Mr. Justice DEL VECCHIO so aptly observed in his dissenting opinion below, "the nature of the activity in which petitioner is engaged is such that it cannot be carried on simultaneously at every point on the premises" (23 A D 2d, p. 344). Petitioner has, as the property owner in Trap Rock conceded it had not, used the single parcel in question for its quarrying operation.
The claimed reliance of the majority in the Appellate Division upon our decision in Town of Somers v. Camarco (308 N.Y. 537) is similarly disingenuous. In Camarco this court clearly rejected the view that, in order to establish a nonconforming use of property for quarrying, its entire area must have been quarried. Even the dissenters in Camarco did not suggest that substantial quarrying operations conducted on a single parcel would be insufficient to establish a nonconforming use as to the entire parcel.
No one seriously urges that the town may not through reasonable regulation control the manner in which petitioner quarries its land (see Town of Hempstead v. Goldblatt, 9 N Y 2d 101, affd. 369 U. S. 590). The town's right to take such a measure was recognized by Justice DEL VECCHIO in his dissent below. The 1948 ordinance created a buffer zone 175 feet deep on petitioner's own land between its quarrying operations and the approaching residential development to the south.[*] Where we differ with the majority here and below is on the question of whether the town's action under the ordinance of 1963 in barring any and all use of the land south of the railroad for quarrying was reasonable in the light of petitioner's prior nonconforming use of this property. We are convinced that the 1963 ordinance was so unreasonable as to amount to an unconstitutional taking. It gives petitioner but seven or eight years in which to recoup its substantial investment in improvements upon the land, undertaken, at least in part, in reliance upon Parcel B's being zoned *743 for quarrying under the 1948 ordinance. After petitioner has exhausted its rock supply to the north of the tracks it will have to terminate its Gates operation. It cannot simply move its operation to another part of town. (Compare Matter of Harbison v. City of Buffalo, 4 N Y 2d 553, where on our remand we directed that Special Term determine inter alia the value and condition of the improvements upon petitioners' property and the feasibility of their relocating so that a proper determination of the reasonableness of the city's actions might be made.) The ordinance of 1963 bars any use of this land, after the rock in Parcel A is depleted, for the purposes for which petitioner purchased it, improved it with buildings and machinery, and for 40 years has used it.
It is a mechanical jurisprudence which would equate a municipality's right to put an end to the keeping of pigeons as a hobby (see People v. Miller, 304 N.Y. 105) with the Town of Gates' destruction of petitioner's substantial property interest in its quarrying business, which would hold that the same respect to be accorded the enactments of a municipal legislature where health and safety considerations are so obvious must be accorded ordinances where the public purpose to be served by their drastic invocation of the police power is not at all so obvious. This court has never in the past given such carte blanche to municipal governments in the field of zoning. (See, e.g., Matter of Harbison v. City of Buffalo, supra; Dowsey v. Village of Kensington, 257 N.Y. 221; Vernon Park Realty v. City of Mount Vernon, 307 N.Y. 493.) Our cases are clear that in order to constitute a valid limitation on the use of property the restrictions imposed must reasonably serve some proper zoning purpose, and what is reasonable can be determined at most through weighing the injury to the property owner against the public benefit sought to be achieved. (See Matter of Harbison v. City of Buffalo, supra, p. 559; Town of Somers v. Camarco, supra, pp. 540-541.) Any other course, it always seemed clear, would run afoul of constitutional limitations upon the exercise of the police power, as the decisions of the United States Supreme Court have so amply demonstrated. (See, e.g., Goldblatt v. Town of Hempstead, 369 U. S. 590, 595-596, supra.) As the Supreme Court said in Lawton v. Steele (152 U. S. 133, quoted with approval in Goldblatt): "To justify the State * * * interposing its authority in behalf of the public, it *744 must appear, first, that the interests of the public * * * require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals" (p. 137).
Application of such a rule requires a case by case evaluation of the injury suffered and the public interest claimed to be advanced. Under such a rule, we do not see how the courts can be content with speculation as to some perhaps remote public good to be served by this challenged enactment. Indulgence of this sort has not been the practice of our courts, which must strive, mightily at times, to do justice to litigants, whether they be private citizens, business concerns or municipal corporations. Certain presumptions may be operative in favor of the third class of litigants, but in the face of clear proof to the contrary such presumptions vanish. Only under judicial scrutiny of this sort can constitutional safeguards against governmental excesses be maintained. This is the lesson of our history and we hesitate to think that it may be so easily forgotten today. Property rights are not to be sanctified, but they need not, and they should not, be so lightly regarded.
We would modify the order of the Appellate Division by reinstating that portion of the order of Special Term directing the Town Board to permit excavation by petitioner on Parcel B, subject to reasonable regulation.
Order affirmed, etc.
NOTES
[*] The record discloses that petitioner has purchased substantial acreage south of the parcel here in question to serve as a buffer zone between its operations and the surrounding community.
[*] Designated pursuant to section 2 of article VI of the State Constitution in place of Keating, J., disqualified.