George H. Nicols, J.
The plaintiffs in this action all residents of Kings County consist of a number of persons injured in separate automobile accidents, after February 1, 1974, with insured owners, and have all joined together in a single action against their respective tort-feasors and insurers.
Each of the plaintiffs fall within a certain class as established by article XVIII of the Insurance Law and are barred from commencing an action for their personal injuries to recover for "non-economic” losses.
There are now before this court three motions: (1) by all of the defendants for an order pursuant to CPLR 3211 dismissing the complaint on the merits and declaring article XVIII of the Insurance Law valid in its entirety; (2) by the Attorney-General of the State of New York (intervenor-defendant) for *375 dismissal under CPLR 3211 for lack of plaintiffs’ capacity to sue and for a judgment declaring the law valid, and (3) by the plaintiffs for summary judgment, seeking to declare article XVIII of the New York Insurance Law, the Comprehensive Automobile Insurance Reparations Act, more commonly known as the "No Fault” Insurance Law to be unconstitutional and void in its entirety.
In the first cause of action infant plaintiffs Michael and Timothy Montgomery sustained injuries while passengers in a motor vehicle involved in a collision with another automobile. Infant Michael sustained injuries requiring sutures resulting in a permanent scar. Infant Timothy sustained injuries to his knee, head and back. In neither case will the medical costs reach $500.
In the second cause of action infant plaintiff Ronit Dagon, a pedestrian was struck by a motor vehicle and thereby sustained a simple fracture of the right tibia and metatarsal of the right foot. The medical cost will not reach $500.
The third cause of action is in behalf of plaintiff, William F. Hawkrigg, who was the owner and operator of a motor vehicle that was struck in the rear by another vehicle. This plaintiff suffered injuries to his back but the medical costs shall not exceed $500.
The fourth cause of action is in behalf of plaintiff, James Pelser, who was the owner and operator of a motor vehicle while standing still. This plaintiff suffered injuries to his back and was treated by a chiropractor for which treatments the cost will not exceed $500.
In the causes of action marked fifth to ninth inclusive, the foregoing plaintiffs seek to establish that article XVIII, "no fault” insurance,
(1) Denies each of these plaintiffs access to the courts for the redress of wrongs.
(2) Denies each of these plaintiffs due process, in taking away the right to a trial by jury.
(3) Denies each of the plaintiffs of the equal protection of the laws under the New York State and Federal Constitutions by creating arbitrary classes of "covered” and "noncovered” persons.
(4) Further seek judgment declaring the definition of "serious injury” and "significant disfigurement” to be vague and thereby void.
*376 The tenth cause of action on behalf of plaintiff, Bernard Rosen, was withdrawn.
Article XVIII of the Insurance Law contains new features not heretofore existent under the common law or "fault” system as to pertaining to automobiles. It is known as the Comprehensive Automobile Insurance Reparations Act and became effective February 1, 1974. It shall apply to the use and operation of motor vehicles in this State on or after such date, and any policy of insurance obtained to satisfy the financial security requirements of articles 6 or 8 of the Vehicle and Traffic Law shall be construed as if the provisions required by such article were embodied therein.
Article XVIII of the Insurance Law provides for "compulsory” vehicle insurance to compensate covered persons for basic economic loss up to $50,000 per person for injuries without regard to fault. The right to sue in tort and the right to recover for noneconomic loss are eliminated, unless a "serious injury” is sustained as defined by section 671.[1]
"Serious Injury” is defined as an injury that (a) results in death, dismemberment, significant disfigurement, compound or comminuted fracture or a permanent loss of a body organ, member, function or system; (b) if the reasonable and customary charges for medical, hospital, surgical, nursing, dental, ambulance, X rays, prescription, drugs and prosthetic services necessarily performed as a result of injury would exceed $500.
The term noneconomic losses as defined by section 671 means pain and suffering and similar nonmonetary detriment and are not recoverable except in a case where there is serious injury, or for basic economic loss (§ 673).
*377 Prior to the passage of "no fault,” all claims for losses arising from automobile accidents were litigated through fault based common-law tort litigation. In 1973, the New York Legislature adopted the so-called "no fault” approach which has been heralded to constitute a drastic and fundamental change in this area of the law, but a primary analysis of "no fault” provides only one significant change from the" former tort system. It eliminates the right of an individual to recover for noneconomic loss unless a serious injury is sustained as defined by section 671, and secondly, recovery may be had under article XVIII without regard to fault. In all other instances, where serious injury has been sustained, and in accidents with "noncovered” persons, the court and the tort system are available including the rights of subrogation.
In effect "no fault” provides immunity from being held liable for pain and suffering of the other parties to an accident if they fall within this limited class, even where a driver or owner is at fault.
The legislative objective was to provide a system for prompt and adequate compensation of all minor injuries to "covered persons”; a lessening of the congestion of the court system and thereby a reduction in the delay of court calendars; the elimination of fraud and the subsequent reduction of automobile insurance premiums. This court takes note that the plaintiffs vigorously rebut the remedial nature of "no fault” and point out statistically that the fault based "tort system” has not been the cause of court congestion or delay. They attribute same to other type cases and other causes.
Even assuming the problems described by the defendants do exist, these problems in and of themselves do not permit the adoption of arbitrary and or unrelated means of meeting the problems.
Serious questions arise as to whether the reasons given for the passage of "no-fault” establishes an overpowering public necessity justifying the abrogation of the rights of injured persons to sue for pain and suffering. This court therefore addresses itself to the considerations of the numerous constitutional questions that have been raised; the violation of the due process and equal protection clauses, and the right to a trial by jury as provided for by the United States and New York Constitutions.
The concept of "due process” embraces the general principle that the government shall abide by standards of procedural *378 fairness which have been traditional in Anglo-American Law. These guarantees are not limited to those enumerated in the Bill of Rights but are rather a general guarantee of procedural fairness.
The Equal Protection Clause provides that no State shall deny any person within its jurisdiction the equal protection of the laws; the constitutional guarantee of equal protection does not restrain the normal exercise of governmental power but only the abuse in exertion of such authority. The principle is not profaned, simply because of the exercise of power may result in some inequality, but offended where a classification rests on grounds wholly irrelevant to the achievement of the State’s objective, and is arbitrary and unreasonable. Equal protection requires that the governmental purpose of legislation be a compelling one, and that the intrusion upon the individual rights caused by the classification be necessary to the effectuation of the compelling purposes.
The right to a trial by jury was part of the existing common law enumerated under article 7 of the Bill of Rights and provided for in the State of New York from the framing of the New York State Constitution in 1777 and has been reiterated with each succeeding State Constitution.
The right to a trial by jury exists as an inherent privilege that cannot be abolished statutorily (Gerard v Inglese, 11 AD2d 381).
Trial by jury was constitutionally protected in all cases in which that right existed in the common law prior to 1777, and in all cases to which the right attached in 1777 to 1894. In an action for personal injury, by 1894 an established rule in New York was that assessment of damages was a question for a jury trial if such was sought by either of the litigants.
The legislative power extends to the conservation of the safety and welfare, including the health and morals of its citizens, provided such statutes have a real and substantial relation to the accomplishment of these objects. The statutes may not be arbitrary and unreasonable and are further limited by the due process requirement.
To justify a State in interposing its authority in behalf of the public interest, it must first appear that the interests of the public require, such interference and second. that the means are reasonably necessary for the accomplishment of the purpose (Goldblatt v Town of Hempstead, 369 US 590).
*379 With article XVIII, the Legislature unblushingly has decided to flatly ignore the constitutional guarantees and has no authority to take away the rights of the public, without its consent, to recover for tort injuries without at least constitutional amendment. New or supplemental legislation may serve as enabling acts to carry out the legislative intent but such cannot contradict or contravene the Constitution itself, to which such legislation must be subordinate.
This court finds these sections to be an unwarranted deprivation of the rights of motor vehicle accident tort victims without their consent to recover their actual and long-recognized bodily injury damages in actions at law from tort-feasors. Although "No Fault” is presented to provide alternate remedies, it is in fact a bar to recovery affecting whole classes of litigants and this court finds article XVIII as being oppressive. There has not been shown the public interest requiring such interference.
In these times the rights of the individual are being eroded by the continuous encroaching claims of public interest and need. It is incumbent upon the judiciary to protect and safeguard the right afforded the individual constitutionally. Article XVIII is a denial to some of the citizens of this State their basic constitutional rights that have been the hallmark of this society from the common law, the adoption of the Constitution of the United States, and the Bill of Rights.
The classifications contained in the law as to "covered” and "notcovered” persons are arbitrary and unreasonable. The statute creates a discriminatory system of coverage wherein persons who are injured by "covered” persons may not have access to the courts, and a person injured by a "noncovered” person may commence an action for damages and seek recovery for pain and suffering. There is further no rational reason why an individual who is injured in tort other than an automobile may have access to the courts and a person sustaining the same injury and effects in an accident involving an automobile be barred therefrom, if the "serious injury” test requirement is not met. This is true even where the injuries sustained in each instance are identical, thereby assigning a higher value to pain incurred from a fall on a "sidewalk highway” than pain suffered in a motor vehicle accident:
Article XVIII provides no cause of action for pain and suffering no matter how painful the injuries are, unless it *380 meets the requirements of "serious injury”. Article XVIII is not an adequate substitute for an established body of law.
A substitute for an established body of law which is abolished must be adequate (New York Cent. R.R. Co. v White, 243 US 188).
Article XVIII is not a new system of benefits but only a bar to the rights of some individuals to sue in tort with absolutely nothing in return. The victims who cannot exceed the limits have no adequate remedy.
The classification contained in the law as to serious injury is arbitrary and unreasonable in the light of logic. The key phrases in the statute are the "serious injury” and "significant disfigurement” provisions and the definition of these terms are void for vagueness, and violates the fundamental requisites of "due process”. The threshold requirement is invalid as a denial of the equal protection of the laws; based upon irrational classifications.
In determining the $500 threshold, article XVIII does not rest on a rational basis. The rates for patients vary when they are hospitalized in a private or semiprivate room; medical expenses vary substantially from one area of the State to another and even within areas with respect to all classifications of medical treatment. Some individuals suffering similar injuries may be required to expend more moneys to treat said injuries and take longer to heal than others. Those who can afford higher medical fees than those less economically fortunate reach the threshold much faster than the less financially fortunate. These sections are unrealistic to modern medical costs and the disparities of individual wealth. The rich are treated in private rooms, the poor in the hospital wards. Who is to judge and police the situation to bring to bear a sense of "reasonableness” in so variable an area?
The purpose of this act is to provide a means of compensating persons promptly for accidental bodily injury arising out of automobile accidents.
The court rejects the arguments of the defendants with respect to the Workmen’s Compensation Law establishing the legislative power to abolish the right to a trial by jury. In New York the right to a trial by jury was abrogated in workmen’s compensation cases by an amendment to the New York State Constitution, but just as important the law was adopted because of the employer-employee social relationship and the *381 creation of safe working conditions. Workmen’s industrial compensation was an acceptable area for the exercise of the police power.
The abolishment of the heart balm statutes referred to by the defendants has no relation to the "No Fault” concept since the Legislature abolished a wrong and not the remedy. This was a proper area for the exercise of the police power and is quite different from article XVIII where the remedy is abolished for only certain classes of individuals.
Accordingly, this court grants plaintiffs’ motion for judgment, and finds that article XVIII of the Insurance Law of the State of New York to be unconstitutional and invalid in its entirety.
The motions of the defendants and the Attorney-General, the intervenor defendant, dismissing the complaints is denied.

. Apart from the strictly legal aspects considered, there is brought to this court’s attention the practical approaches pressed by "no fault” proponents that auto liability insurance premiums would be materially lowered.
Common public experience and knowledge seem to prove this contention to be a colossal fraud on the public. The great masses of the New York State population reside, conduct their businesses, employment, and recreation in close proximity to other neighboring jurisdictions. To travel a mere 240 miles from New York City to Washington, D. C., the nation’s capital, requires traversing 4 or 5 other jurisdictions. To merely cross the Hudson River at New York City or Yonkers finds a motorist in New Jersey. Short motor travel finds one in Connecticut, Massachusetts, or Canada. Adequate interstate travel insurance protection now requires the motorist subject to this New York law, to purchase additional insurance protection at materially greater additional cost.
These factors, however, were not considered concerning the subject upon which this court founded its decision. "Compelling public necessity” evidently points in an altogether different direction than that which no fault proponents intended.