**Harold SADOWSKY, Vincent Ruisi and Chelsea West Associates, Plaintiffs,**

**v.**

**CITY OF NEW YORK and Anthony Gliedman, as Commissioner of the Department of Housing Preservation and Development of the City of New York, Defendants.**

No. 83 Civ. 8389(RLC).

United States District Court,
S.D. New York.

Jan. 12, 1984.

**1578**

Kramer, Levin, Nessen, Kamin & Frankel, New York City, for plaintiffs; Greg A. Danilow, Joseph A. Greenaway, Jr., New York City, of counsel.

Frederick A.O. Schwarz, Jr., Corp. Counsel, New York City, for defendants; Joseph I. Lauer, Gabriel Taussig, Albert G. Fredericks, New York City, of counsel.

ROBERT L. CARTER, District Judge.

Plaintiffs, Harold Sadowsky, Vincent Ruisi, and Chelsea West Associates [1] seek a preliminary injunction pursuant to Rule 65(a), F.R.Civ.P., to enjoin the application of Local Law 19, a recently enacted section of the New York City Administrative Code. The law's purpose is to prevent the harassment and displacement of residents in "single room occupancy" dwellings, ("SROs"), who are generally poor and elderly, and otherwise vulnerable to the tactics used by landlords in attempts to evict them without proper judicial proceedings. The law restricts the conversion of SROs to other uses where harassment of residents has been used to vacate such buildings and facilitate their conversion to more financially profitable property.

Pursuant to Local Law 19, plaintiffs were denied a building permit, which was necessary to enable them to renovate two vacant, dilapidated and concededly uninhabitable buildings that they had contracted to purchase approximately two months before the enactment of Local Law 19. Plaintiffs allege that the law is unconstitutional as applied to them because the law effects a "taking" without just compensation in violation of the Fifth and Fourteenth amendments. They have requested injunctive relief, in addition to damages. Because, as explained below, plaintiffs cannot satisfy this Circuit's standard for preliminary injunctive relief, their request is denied.

*Background*

1. *Local Law 19*

Local Law 19 requires owners of SROs to obtain a certification of no harassment before they may alter or demolish their property since no building permits may be granted without certification. The law generally restricts any party from altering an SRO building for approximately 36 months if harassment is found to have occurred on the premises during the relevant statutory period.[2] Although, in this way, the law may prevent owners from developing vacant buildings when they themselves have not committed or participated in acts of harassment if a certification of no harassment cannot be obtained with regard to the premises, the absence of such a restriction would allow landlords, after harassing tenants to vacate the premises, to realize a profit by selling the vacant building(s) to developers at prices reflecting the buildings' potential value after their conversion, and thus, to escape the law's sanctions.

There are, nevertheless, some cases in which the law authorizes waivers of the certification requirement.[3] Individuals who obtained their interest in an SRO building before May 5, 1983, the date corresponding to probable public notice of the law's regulatory scheme,[4] are not required

---

1. Plaintiffs Ruisi and Sadowsky are general partners of Chelsea West Associates, a limited partnership which owns the premises that are the subject of the dispute in this case.

2. The Department of Housing Preservation and Development is authorized to determine whether there were any acts of harassment. The inquiry conducted concerns the three-year period preceding the owner's application for a building permit. *See* § C26–118.8(b)(2).

3. Section D26–40.06, subdivision (e) provides that the Commissioner may grant a waiver of certification of no harassment. *See* note 5, *infra*.

4. On May 5, 1983 the City Council's Committee on Housing voted its approval of Local Law 19 and recommended passage to the full Council. The Committee's approval received significant news coverage.

to obtain no harassment certification.[5] To secure the waiver, the law requires that such individuals have recorded a deed or contract for the purchase of an SRO building prior to May 5, 1983. Recordation is mandated to insure against collusion between unqualified SRO owners and prior owners, such as the backdating of documentation surrounding the contract.[6]

### 2. *Plaintiff's Transaction*

According to plaintiffs, Sadowsky and Ruisi[7] entered into a contract to purchase the premises at 332–334 West 19th Street on March 18, 1983. The buildings on the property had been SRO multiple dwellings that had been vacant for approximately six months before plaintiffs contracted to buy them. The partnership planned to completely renovate the two buildings by expanding and converting them into ten residential apartments.[8]

Plaintiffs submitted an application for a building permit to the Building Department on May 10, 1983. Because the previous owners also had an application on file, the Building Department declined to consider either application until one was withdrawn, which apparently did not occur until some time after June 24, 1983, the closing date. On July 1, 1983, the forms relating to applications for certificates of no harassment were made available pursuant to Local Law 19, and on July 8, plaintiffs submitted their application. In connection with the application, plaintiffs also sought a waiver of certification of no harassment which they premised on a pre-May 5th contract of sale date with respect to the property at issue.

Plaintiffs had not recorded their contract, but in their application they submitted other evidence concerning the contract date. On October 7, 1983, three months after the application had been filed, it was denied. The Department of Housing Preservation and Development found that plaintiffs did not qualify for a waiver of certification of no harassment since the contract of sale had not been recorded prior to May 5th. The Department also informed plaintiffs that there was reasonable cause to believe that harassment had occurred at 332–334 West 19th Street during the inquiry period, May 10, 1980—May 10, 1983, and that a hearing would be held to determine whether the allegations of harassment were accurate.

Plaintiff's claim for preliminary relief centers upon the economic injury they have sustained and will continue to suffer as a result of the law's "Draconian" effects. Sadowsky Affidavit at 8. The plaintiffs maintain that if they must forego the planned development of the buildings at issue here until three years from the last date harassment is found to have occurred, as the law prescribes, the economic viability of the property will be destroyed. The law produces an unconstitutional taking, plaintiffs contend, because it prohibits use of the property for any reasonable beneficial purpose. In addition, application of the law as to plaintiffs will result in irreparable injury, they allege, because plaintiffs are facing bankruptcy in consequence of the expenses the partnership has incurred thus far, and will be unable to carry the project during the required waiting period. In seeking preliminary injunctive relief, plaintiffs seek the right to begin redevelopment of the subject buildings pending the Court's final decision on the merits.

---

**5.** Section D26–40.06(e) of Local Law 19 provides that even if harassment did occur, a waiver of certification of no harassment may be given if the present owner (1) was the owner of record or had entered into a recorded contract of sale prior to May 5, 1983, (2) the present owner was not the owner during any period in which harassment occurred, and (3) the owner acquired title pursuant to a bona fide transaction not intended to evade Local Law 19.

**6.** The law also authorizes the Commissioner to investigate the activities of the person seeking the waiver and the transaction by which he obtained his interest.

**7.** Sadowsky and Ruisi were acting as nominees for the soon-to-be formed Chelsea West Associates.

**8.** Sadowsky and Ruisi obtained a $250,000 cash investment from four limited partners and made a $100,000 cash investment themselves.

*Determination*

■■ Preliminary relief is an extraordinary remedy which should not be granted routinely. *Medical Society of the State of New York v. Toia*, 560 F.2d 535, 538 (2d Cir.1977). The standard established in this Circuit requires two distinct inquiries. *See Arrow United Industries v. Hugh Richards, Inc.*, 678 F.2d 410 (2d Cir.1982). Plaintiff must demonstrate (a) irreparable harm and (b) either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in plaintiffs' favor. *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979). In this case, however, the question of injury and hardship must be set aside[9] since plaintiffs can show neither a likelihood of success on the merits of their claim nor a substantial question going to the merits. *See Crouse-Hinds v. Internorth*, 634 F.2d 690, 701 (2d Cir.1980).

Government regulation affecting property interests is subjected to a limited standard of review. *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68, 101 S.Ct. 2176, 2182, 68 L.Ed.2d 671 (1981). Courts have emphasized the breadth of municipal power to control land use and have sustained the regulation "if it is rationally related to legitimate state concerns and does not deprive the owner of economically viable use of his property." *Id., citing*

Agins v. City of Tiburon, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980). In this respect, plaintiff has not raised even a substantial question going to the merits.

■ First, there seems little dispute that Local Law 19 constitutes a valid exercise of New York City's police power. The law was enacted to prevent the harassment and displacement of SRO residents by restricting the conversion of such buildings to more profitable residential uses where such harassment is found to have occurred. Both the law's purpose and the means chosen to effect that purpose bear a reasonable relationship to the health, safety or welfare of the public. *Village of Belle-Terre v. Boraas*, 416 U.S. 1, 18, 94 S.Ct. 1536, 1545, 39 L.Ed.2d 797 (1974). Plaintiffs, challenging the construction of the waiver provision in particular, fail to demonstrate the unreasonableness of the scheme. *See Goldblatt v. Town of Hempstead, New York*, 369 U.S. 590, 596, 82 S.Ct. 987, 991, 8 L.Ed.2d 130. The presumption of reasonableness lies with the State, *Salsburg v. Maryland*, 346 U.S. 545, 553, 74 S.Ct. 280, 284, 98 L.Ed. 281 (1954), and the recordation requirement represents an obvious and reliable way of ensuring that the applicant had, in fact, obtained his interest in the premises before the public was placed on notice of Local Law 19's regulatory requirements. Furthermore, the recordation requirement applies to all

**9.** There can be no doubt that plaintiffs have suffered injury in this case, although the Court has not determined whether such injury can be considered "irreparable." *See Sperry Int'l Trade, Inc. v. Government of Israel*, 670 F.2d 8 (2d Cir.1982). Sadowsky and Ruisi have invested $220,000 in the project, and claim they have depleted their liquid assets and exhausted their ability to borrow funds. They also state that the assets of Chelsea West Associates are being depleted. In awaiting the decision of the Department of Housing Preservation and Development plaintiffs say they are incurring costs of over $10,000 a month in mortgage payments, short term loans, taxes, etc. The cumulative cost of delay, they claim, is $50,000. Further delay would clearly cause problems with contracts already negotiated and with planning for future contracts, as well as with financing arrangements.

Consequently, defendant's suggestion that we need not reach plaintiffs' claims of injury and deprivation of their property rights because these claims are not ripe for adjudication is unconvincing. The State argues that since a full evidentiary hearing is still to be held to consider plaintiffs' entitlement to certification based on alleged instances of harassment committed within the statutory period, plaintiffs' claim for relief is grounded on "nothing more than speculation." The State itself, however, has demonstrated otherwise. According to the State's Affidavit, there seems to be only a slim chance that plaintiffs could prevail at the hearing (Schulz Affidavit ¶ 12), and plaintiffs have, as indicated above, alleged facts sufficient to overcome doubt that the threats of injury are mere "speculation."

purchasers in plaintiffs' position, undermining the argument that strict application of the requirement in plaintiffs' case is arbitrary or discriminatory. *See Nectow v. Cambridge,* 277 U.S. 183, 48 S.Ct. 447, 72 L.Ed. 842 (1928).

■ Second, although plaintiffs correctly describe some of the general principles governing the Takings Clause, *see Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 102 S.Ct. 3164, 3171, 73 L.Ed.2d 868 (1982),[10] they incorrectly assume that Local Law 19 is unconstitutional because it produces a somewhat harsh result in their case. *See Wickard v. Filburn,* 317 U.S. 111, 129–130, 63 S.Ct. 82, 91, 87 L.Ed. 122 (1942).[11] The standard generally used to determine whether a regulation in furtherance of the general welfare has worked a taking is whether the regulation denies an owner "economically viable" use of his land. *Agins v. City of Tiburon, supra,* 447 U.S. at 260, 100 S.Ct. at 2141. The standard is not whether plaintiff is deprived of his property's most beneficial use, nor whether the value of his property has been substantially reduced. *Andrus v. Allard,* 444 U.S. 51, 66, 100 S.Ct. 318, 327, 62 L.Ed.2d 210 (1979). Plaintiffs' assertions that all economically viable uses of their land are foreclosed by the regulation seem, however, dependent on demonstrations of the latter consequences and upon allegations that their financial circumstances prevent them from developing the premises in any way which does not accord with their original plans for its use.

■ The obvious use of the buildings entails returning them to their status as SROs. If plaintiffs cannot financially undertake the project, another developer might be able to do so. Local Law 19 has not destroyed plaintiffs' right to sell the property; the probability that such a sale will not allow plaintiffs to recoup their costs does not, as indicated, provide evidence of an unconstitutional taking. Similarly, plaintiffs' financial inability to delay construction for the remainder of the 36-month waiting period,[12] while sustaining the cost of the vacant premises, does not foreclose the possibility that another developer might find it worthwhile to make the investment.

That the buildings might remain vacant and prove an eyesore to the surrounding community and that plaintiffs might be penalized for harassment they did not perpetrate are troublesome consequences of enforcing Local Law 19 in this case. These consequences do not, however, amount to a determination that the public at large, rather than plaintiffs, must bear the burden of reasonable efforts by the city to break patterns of harassment, violence and other illegal conduct against SRO residents.[13]

---

**10.** *Loretto* involved a suit by a New York City landlord against a cable television company claiming that the company's installation of its facilities on plaintiff's property, pursuant to New York law, which required the landlord to submit to the installation, constituted an unconstitutional taking. The Court noted the distinction between cases involving actual physical intrusion and those involving regulation of land use alone.

As *Penn Central* [*Penn Central Transp. Co. v. City of N.Y.,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) ] affirms, the Court has often upheld substantial regulation of an owner's use of his own property where deemed necessary to promote the public interest. At the same time, we have long considered a physical intrusion by government to be a property restriction of an unusually serious character for purposes of the Takings Clause. *Id.* 102 S.Ct. at 3171.

This case fits squarely in the former category and the considerations emphasized by plaintiffs in relying on *Loretto* and other cases of physical intrusion do not govern here.

**11.** The Court wrote: "An act of Congress is not to be refused as arbitrary and capricious and forbidden by the Due Process Clause merely because it is deemed in a particular case to work an inequitable result." *Wickard v. Filburn, supra,* 317 U.S. at 129–130, 63 S.Ct. at 91.

**12.** Section C26–118.8(b)(7).

**13.** *See Agins v. City of Tiburon, supra,* 100 S.Ct. at 2141. (determination that governmental action constitutes a taking is determination that the public at large, rather than single owner, must bear burden of exercise of state power in public interest).

Despite the hardships imposed upon plaintiffs by Local Law 19, it is clear that the law has not deprived them of economically viable uses of their property. They have not presented a substantial question for litigation. Accordingly, plaintiffs' motion for preliminary relief must be denied.

IT IS SO ORDERED.