## State v. Chessie System Railroad
## Case No. 2494
## Wayne County, (9th)
## Decided January 3, 1990
[Cite as 1 AOA 323]

*Corey E. Spitler, Asst. Prosecutor, 207 N. Main St., Orrville, OH 44667 for Plaintiff.*

*Robert J. Caffrey, Attorney at Law, 75 E. Market St., Akron OH 44308 for Defendant.*

BAIRD, J.

This cause comes before the court upon the appeal of defendant-appellant Chessie System Railroad from its conviction in the Municipal Court of Wayne County on two charges of violation of R.C. 5589.21, which prohibits obstruction of public roadways by railroad trains. This statute reads, in part:

"No railroad company shall obstruct, or permit or cause to be obstructed a public street, road, or highway, by permitting a railroad car, locomotive or other obstruction to remain upon or across it for longer than five minutes, to the hindrance or inconvenience of travelers or a person passing along or upon such street, road, or highways. No railroad company shall fail, at the end of each five minute period of obstruction of a public street, road, or highway, to cause such railroad car, locomotive, or other obstruction to be removed for sufficient time, not less than three minutes, to allow the passage of persons and vehicles waiting to cross.

"This section does not apply to obstruction of a public street, road, or highway by a continuously moving through train or caused by circumstances wholly beyond the control of the railroad company, but does apply to other obstructions, including without limitation those caused by stopped trains and trains engaged in switching, loading or unloading operations."

On November 3, 1988, and again on November 4, 1988, appellant's trains were observed by a Wayne County deputy sheriff in violation of the above statute, obstructing a roadway for at least thirteen minutes on November 3, and for at least twenty minutes on November 4. On November 3, the train was approximately two miles long, and blocked five roadways simultaneously. On both occasions, appellant had stopped in order to perform coupling and uncoupling procedures involving several railroad cars. Pursuant to the federal safety requirements of sections 232.12 and 232.13, Title 49, C.F.R., the train conductors on both occasions performed safety tests on the trains' air brakes, procedures that required the trains to be stationary for anywhere from eight to twenty minutes.

The complaints filed by the deputy sheriff were consolidated for trial. Appellant was found guilty on both charges, and fined one hundred dollars and court costs for each offense. Appellant assigns three errors on appeal.

### ASSIGNMENT OF ERROR I
"Ohio Revised code Section 5589.21 is unconstitutional given the federal government's pre-emption of state legislation interfering or in conflict with

the federal railroad safety act, 45 U.S.C. Sections 421-434."

Section 434, Title 45, U.S. Code reads:

"The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable.

A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce."

Federal law may preempt state regulations in several circumstances. First, when Congress, in enacting a federal statute, has expressed a clear intent to preempt state law; second, when it is clear, despite the absence of explicit preemptive language, that Congress has intended, by legislating comprehensively, to occupy an entire field of regulation and has thereby left no room for the states to supplement federal law; and, finally, when compliance with both state and federal law is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objections of congress. *Capital Cities Cable, Inc.* v. *Crisp* (1984, 467 U.S. 691, 698-99.

As this statute expressly allows the states to regulate essentially local safety hazards, there is no explicit or implicit preemption of the subject matter of R.C. 5589.21.

Appellant contends, however, that R.C. 5589.21 is preempted by federal regulations in that compliance with both regulatory schemes is impossible:

"A holding of federal exclusion of state law is inescapable and requires no inquiry into congressional design where compliance with both federal and state regulations is a physical impossibility for one engaged in interstate commerce. . ."
*Florida Avocado Growers* v. *Paul* (1963), 372 U.S. 132, 142-43.

Appellant contends that the time necessary to perform the safety checks of a train's air brakes that are required by relevant provisions of sections 232.12 and 232.13, Title 49, C.F.R.[1] makes it impossible to simultaneously comply with the requirements of R.C. 5589.21, and that therefore this statute is unconstitutional as an undue burden on interstate commerce.

There is a strong presumption in favor of the constitutionality of a statute. 16 Ohio Jurisprudence 3d, Constitutional Law, Sections 159-164.

A party asserting the unconstitutionality of a statute must show clearly that the law contravenes the constitution. *Id.* at Section 165. Appellant fails to satisfy this heavy burden of proof in that there is no evidence presented on the record of the "physical impossibility", under any circumstances, of dual compliance with state and federal regulations.

At best, the evidence shows only that, at the given place where appellant *chose* to perform its coupling and uncoupling functions, it was impossible for it to comply with both regulatory schemes.

Appellant fails to show -- or even allege -- that there are no reasonable, alternative locations or circumstances under which dual compliance would be possible. Further, appellant fails to rebut the state's contention that reasonable alternatives do exist -- such as shortening the length of trains, building of an overpass or underpass, finding other location at which to perform these operations, or performing the train-car "cuttings" at the roadway -- through which dual compliance could be accomplished without undue burden.

As there is no direct relation or conflict between this state statute, designed to keep roadways clear for general traffic, and the federal regulations regarding safety checks on train air brakes, and as appellant has failed to demonstrate any "inevitable collision" between these two schemes of regulation, see *Florida Avocado Growers* v. *Paul, supra,* at 143, appellant's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II
"Ohio Revised Code Section 5589.21 is unconstitutional in that it is an unreasonable and arbitrary exercise of the

state's police power."[2]

Appellant faces an equally heavy burden of proof in its second assignment of error. "The police power is an attribute of sovereignty and has its origin, purpose and scope in the general welfare, or as it is often expressed, the public safety, public health and public morals." *Mirick* v. *Gims* (1908), 79 Ohio St. 174, 178-179. The purpose of R.C. 5589.21 is to facilitate the movement of traffic and to discourage unnecessary blockades. *Capelle* v. *B. & O. RR. Co.* (1940), 136 Ohio St. 203 (construing G.C. 7472, the forerunner to the present statute). Underlying this purpose is the paramount concern of assuring that movement of emergency vehicles will not be impaired. *Ashtabula* v. *Kovacs* (1965), Ohio App. 2d 320, 323.

Appellant has the burden of overcoming the presumption of the reasonableness and constitutional validity of the state's exercise of its police power. *Goldblatt* v. *Town of Hempstead* (1962), 369 U.S. 590, 596. The exercise of the police power will be upheld if any state of facts, either known or which could be reasonably assumed, affords support for it. *Id.*

The exercise of a state's police power is not without its limitations, however:

> "In order to constitute a valid exercise of the police power, legislation must directly promote the general health, safety, welfare or morals and must be reasonable, the means adopted to accomplish the legislative purpose must be suitable to the end in view, must be impartial in operation, must have a real and substantial relation to such purpose and must not interfere with private rights beyond the necessities of the situation. ***."

*Teegardin* v. *Foley* (1957), 166 Ohio St. 449, paragraph one of the syllabus.

Thus, if the exercise of the police power is an unreasonable or arbitrary infringement upon private rights, that exercise would be constitutional. *Mirick* v. *Gims, supra*, at 178-79.

Appellant's sole basis for claiming that R.C. 5589.21 is arbitrary and unreasonable lies in the five-minute time limit imposed by the statute. Appellant argues again, as in assignment of error one, that this time limit

forces it to choose between compliance with state or federal requirements. Thus, the statute unconstitutionally deprives it of its right to use the highway, which is "co-ordinate and equal" to the right of the public to the same. See *Pittsburgh Ft. Wayne and Chicago Ry. Co.* v. *Maurer* (1871), 21 Ohio St. 421.

We have found no cases that rule specifically on the constitutionality of R.C. 5589.21. However, the Ohio Supreme court has commented with approval on the provisions of G.C. 7472 (the predecessor to R.C. 5589.21) while holding that a particular municipal ordinance on the same subject matter was unconstitutionally arbitrary and unreasonable for lack of such provisions. *Cincinnati* v. *Luckey* (1940), 153 Ohio St. 247, 249.

Guided by the reasoning of the Supreme Court in this case, we find that R.C. 5589.21 is not unconstitutionally unreasonable or arbitrary in its imposition of a five-minute time limitation on railroad obstruction of roadways. This time limitation is not absolutely imposed, as it is modified by the language "to the hindrance or inconvenience of travelers or a person passing along or upon such street, road, or highways." It does not apply to "continuously moving through" trains, and does not apply where the obstruction is caused by circumstances *wholly beyond the control* of the railroad company. As discussed under assignment of error one, there is no evidence to show that the situation on November 3 or November 4 was created by anything but the railroad's own choice as to where to conduct its desired operations. The legislature impliedly recognized that such choices are entirely within the control of the railroad company when it applied the statute specifically to obstructions created by "stopped trains and trains engaged in switching, loading, or unloading operation." As for the question of whether five minutes is a reasonable amount of time, even if this court found that it was debatable whether the five-minute limitation was reasonably required to accomplish the general public welfare purposes of the statute, such debatable questions as to reasonableness are not for the courts, but for the legislature to resolve. *Goldblatt* v. *Town of Hempstead, supra*, at 595. On such issues, it is the legislature's province to determine the proper balance of the "co-ordinate and equal" rights of the railroads and the public at large to access to roadways.

We find that R.C. 5589.21 is suitably adopted and substantially related to achieving

its purpose, and that appellant has failed to demonstrate that the statute is unconstitutionally arbitrary or unreasonable. Appellant's second assignment of error is overruled.

### *ASSIGNMENT OF ERROR III*
"The trial court erred in failing to dismiss the state's complaint given the state's failure to meet its burden of proof."

In support of this assignment of error, appellant cites *Higgins* v. *Grove* (1884), 40 Ohio St. 521. In that case, the Ohio Supreme Court construed a former Ohio statute -- section 4748 of the Revised Statutes of Ohio – that prohibited any person or corporation from obstructing "unnecessarily, any public road or highway . . . to the hindrance or inconvenience of travelers, or any person passing along or upon such road or highway...". The Supreme Court stated that:

"* * * The obstruction must amount to an actual hindrance or inconvenience of travelers, or of any person passing along or üpon the road or highway. There must be a real impediment to the free use of the highway--a real obstacle that hinders and incommodes those who travel or pass along the road;... The statute is penal, and if the encroachment by a fence upon the highway is of such a nature that no one using the highway,is practically incommoded if the highway, notwithstanding, meets all the requirements of public travel and convenience, the obstruction is not such as is contemplated by the statue. * * *."

Appellant construes this language as requiring evidence at its trial either that the deputy sheriff who observed the violation had a present intention to cross the roadway, and that he was thus *actually* hindered from doing so, or that there were other individuals who could be named or otherwise identified who were actually hindered from traveling on the roadway. Assuming *arguendo* that the construction of the statute in *Higgins* is equally applicable to R.C. 5589.21, we find no merit in appellant's contention. There is evidence of complaints being made by the public on November, 3 and of the deputy sheriff's observation on both occasions that travelers on the roadway were either forced to wait or forced to find alternate routes. Evidence of the identities of those inconvenienced or proof of

their intent to cross the railroad tracks is not required to establish the elements of the state's *prima facie* case. We find the evidence sufficient to establish the state's *prima facie* case and to sustain the convictions in this case. Appellant's third assignment of error is overruled.

*Judgment affirmed.*

The Court finds that there were reasonable grounds for this appeal. We order that a special mandate issue out of this court, directing the County of Wayne, Municipal Court to carry this judgment into execution. Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E).

QUILLIN, P. J., REECE, J., Concur

---

[1] As the exact nature of these required procedures is not in issue, we do not quote the technical language of these regulations here.

[2] Appellant does not cite any specific provisions of either the Ohio Constitution or the United States Constitution upon which R.C. 5589.21 infringes. Appellant's argument is apparently based upon the broad principle that a state may not unreasonably infringe upon the general body of private rights granted to citizens by the United States Constitution.