**Eugene R. LEVERETT, doing business as Limon Veterinary Clinic and Ruth F. Leverett, Plaintiffs,**

v.

**TOWN OF LIMON, John McQuay, Dennis E. Coontz, Jerry Chandler, Galen Hareld, Al Sides, David E. Schroeder, Howard Stone and Norman Sunderland, Defendants.**

Civ. A. No. 81–C–2116.

United States District Court, D. Colorado.

July 27, 1983.

John A. Criswell, Criswell, Patterson, McNamara, Myles & Bell, Englewood, Colo., for plaintiffs.

Robert D. Hawthorne, Limon, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

Plaintiffs filed this action seeking damages and injunctive relief for the defendants' alleged violations of 42 U.S.C. § 1983. Defendants, the town of Limon and members of its Board of Trustees, have been sued only in their official capacities. Plaintiffs claim that by adopting and enforcing certain zoning ordinances the defendants violated their substantive and procedural due process rights. U.S. Const. amend.

XIV. Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343.

Trial to court was held April 19–21, 1983. This memorandum opinion constitutes the findings of fact and conclusions of law required by Fed.R.Civ.P. 52(a).

## I. GENERAL BACKGROUND.

Plaintiffs, Eugene and Ruth Leverett, own approximately five acres of land within the town of Limon, Colorado. Eugene Leverett, a licensed veterinarian, has operated a veterinary clinic on that property since 1973. Plaintiffs' primary source of income is treating relatively large numbers of cattle, 200 or more at a time, for "shipping fever." Cattle raising, marketing, and shipping contribute substantially to Limon's economy.

On July 1, 1965, Limon adopted Ordinance No. 188. This ordinance zoned the western portion of the plaintiffs' acreage for business and industrial use and the eastern portion for residential use only.

In 1974 Limon adopted Ordinance No. 232, which also affected the zoning of the plaintiffs' property. This ordinance, however, was inconsistent with the zoning map which accompanied it. The ordinance rezoned the previously residential eastern portion of the plaintiffs' property by changing it to business and industrial use. But the zoning map left the eastern portion zoned as residential.

In the summer of 1980, John McQuay, then Limon's Superintendent and Building Inspector, was considering citing the plaintiffs for allegedly violating the town's zoning ordinances. At the same time, McQuay lived next door to the Leveretts' clinic and had made complaints about the noise, odors, flies and similar problems inflicted on the neighborhood by the Leverett operation.

Prior to citing the Leveretts, McQuay met with the Limon Board of Adjustment and discussed with them, privately, his desire to cite the Leveretts. This Board was the only administrative body to which McQuay's citations could be appealed.

McQuay subsequently cited the plaintiffs, and when they appealed the citation, McQuay was present at the appeal hearing as a member of the Board of Adjustment. On October 30, 1980, the Board denied the Leveretts' appeal.

Subsequently, Limon's Board of Aldermen held a series of rezoning hearings affecting the plaintiffs' property. In July 1981, the Board of Alderman adopted Ordinance No. 274 which zoned all the Leverett property as suitable for commercial use.

Soon after adopting Ordinance No. 274, however, the Board of Aldermen enacted Ordinance No. 279. This ordinance limited the number of cattle allowed on the plaintiffs' property at one time to thirty-six. Plaintiffs claim that enforcement of Ordinance 279 will destroy Dr. Leverett's veterinary practice, a practice dependent on having up to 200, and sometimes more, cattle on the premises at a time.

During trial, it became apparent that the only consistent trait in Limon's treatment of the plaintiffs' property has been inconsistency. With one hand, Limon has enacted an ordinance encouraging the plaintiffs' business. Then with the back of its hand, Limon has enacted a contrary ordinance either severely restricting or prohibiting the business. Subsequently another ordinance may once again allow operation of the clinic.

Further, the procedures used in adopting these ordinances have been questionable at best. The minutes from one meeting, at which an ordinance purportedly was adopted, fail even to show that there was a vote on adopting the ordinance, or the result of any such vote.

McQuay played a pivotal role in the plaintiffs' ongoing zoning skirmishes with Limon. As above stated, before he cited the plaintiffs for a zoning violation, he tainted their right of appeal by discussing with the appellate board his decision to cite them. Then he participated in the appeal hearing. His complaints to the Leveretts that their clinic interfered with his enjoying his home cannot be ignored. Finally, during at least some of the time the citation, appeal and

rezoning were proceeding, McQuay was a co-plaintiff in a civil suit which sought to have the Leveretts' clinic declared a nuisance. Throughout the pendency of that civil action, McQuay, in his official capacity as Town Superintendent and Building Inspector, continued his presence at or participation in the various procedures affecting the Leveretts' zoning.

## II. LEVERETTS' CLAIMS.

### A. Substantive Due Process.

Plaintiffs claim that Ordinance No. 279, which regulates the number of cattle they may keep at their clinic, violates their substantive due process rights. U.S. Const. amends. V, XIV. A two-pronged analysis is required to decide the substantive due process question.

■ The first prong requires considering whether Limon, pursuant to its police power, could properly adopt an ordinance such as No. 279. *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 414, 43 S.Ct. 158, 159, 67 L.Ed. 322 (1922). I find that there is a reasonable relationship between the number of cattle kept in a restricted area within a municipality and the risk of various diseases, including zoonotic diseases, *i.e.,* those transmissible from the cattle to humans. Moreover it is obvious that the odors, dust, and manure produced by cattle increase with their number, and the number of flies attracted likewise increases. Thus, I find that Ordinance No. 279 promotes the public health and cleanliness, and I conclude that it is a valid exercise of the town's police power.

■ The second prong requires inquiring whether, assuming Limon had the power to adopt Ordinance No. 279, the ordinance deprives the plaintiffs of their property in a manner that constitutes a "taking"? In *Goldblatt v. Town of Hempstead,* 369 U.S. 590, 595, 82 S.Ct. 987, 990, 8 L.Ed.2d 130 (1962), the court held that in evaluating the reasonableness of an ordinance, a court must balance "such things as the nature of the menace against which it will protect, the availability and effectiveness of other

less drastic protective steps, and the loss which appellants will suffer from the imposition of the ordinance." *Id.* at 595, 82 S.Ct. at 990. Although this ordinance no doubt imposes a hardship on the plaintiffs, the ordinance is reasonable in light of the dangers sought to be prevented and the ineffectiveness of reasonably available alternatives. *See also Hodel v. Virginia Surface Mining and Reclamation Association,* 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981); *Hadecheck v. Sebastian,* 239 U.S. 394, 410, 36 S.Ct. 143, 145, 60 L.Ed. 348 (1915) (held property not "taken" though ordinance decreased its fair market value from $800,000 to $60,000).

Thus, I find and conclude that Limon had the power to enact Ordinance No. 279, and that the ordinance does not unconstitutionally take the Leveretts' property. Therefore I conclude that no denial of substantive due process has been shown.

### B. Procedural Due Process.

■ Plaintiffs also allege that their procedural due process rights guaranteed by the Fourteenth Amendment have been violated. After McQuay cited the plaintiffs, they appealed to the Board of Adjustment. As stated, however, McQuay previously had "poisoned the well" by conferring with the Board of Adjustment in private about the matter. He then sat as a member of the Board during the appeal. I find that McQuay, in his dual positions as Town Superintendent and Building Inspector, necessarily played an influential role in the decision to cite the plaintiffs and in the decision to affirm that citation on appeal. It seems obvious that as a plaintiff in the civil nuisance action against the Leveretts arising out of the same matter, and as an offended neighbor, McQuay had a personal and financial interest in getting the plaintiffs cited for a zoning violation. Obviously the value of his neighboring residential property would have been affected by closing the plaintiffs' clinic. He should have recused himself from any participation and absented himself from meetings and hearings where the matter was considered.

"It is sufficiently clear from our cases that those with a substantial pecuniary interest in legal proceedings should not adjudicate those disputes." *Gibson v. Berryhill,* 411 U.S. 564, 579, 93 S.Ct. 1689, 1698, 36 L.Ed.2d 488 (1973). I find and conclude that McQuay's presence and continuing participation throughout the proceedings so permeated the appellate process with bias that it was impossible to obtain a fair hearing before an impartial tribunal. Thus the essence of procedural due process was denied.

■ A biased official participating in an adjudicatory hearing deprives a litigant of the fair tribunal indispensable to due process. *Roberts v. Morton,* 549 F.2d 158 (10th Cir.1977), *cert. denied,* 434 U.S. 834, 98 S.Ct. 121, 54 L.Ed.2d 95 (1977); *see also Helena Laboratories Corp. v. N.L.R.B.,* 557 F.2d 1183 (5th Cir.1977); *Doraiswamy v. Secretary of Labor,* 555 F.2d 832 (D.C.Cir.1976). "One who stands to gain or lose personally by a decision either way is disqualified by reason of interest to participate in the exercise of judicial functions. A disqualifying interest may be pecuniary or may involve the imbalance that is presumed to persist in one who has played the role of advocate in the same case." 3 K. Davis, *Administrative Law Treatise* ¶ 19:6, at 392 (2d ed. 1980).

I find and conclude that the Leveretts were denied procedural due process in the citation and in the appeal.

■ Plaintiffs also seek to recover attorneys' fees they incurred in contesting their citation. I find that attorneys' fees were a reasonably foreseeable, compensable item of loss caused by the defendants' citation, and conclude that the plaintiffs are entitled to recover reasonable attorneys' fees from the defendants. *See Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Clappier v. Flynn,* 605 F.2d 519, 528 (10th Cir.1979).

■ Plaintiffs further seek to recover their reasonable attorneys' fees incurred in maintaining this civil action. I find that the plaintiffs have two distinct claims in this case for which they seek two distinct remedies. Plaintiffs are the prevailing party and are entitled to recover their reasonable attorneys' fees incurred in prosecuting their procedural due process claim. *See Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Ramos v. Lamm,* 567 F.2d 131 (10th Cir. 1983). They are not, however, the prevailing party as to their substantive due process claim and are not entitled to recover attorneys' fees attributable to that claim.

Accordingly,

IT IS ORDERED that the plaintiffs are entitled to relief on their procedural due process claim. Defendants' citation of the plaintiffs for having violated the Limon zoning ordinances is ordered stricken. Plaintiffs' claim for denial of substantive due process is dismissed with prejudice. Costs shall be awarded to the plaintiffs.

IT IS FURTHER ORDERED that the plaintiffs are entitled to recover from the defendants the reasonable attorneys' fees they incurred in appealing McQuay's citation to the Board of Adjustment.

IT IS FURTHER ORDERED that the plaintiffs, as the prevailing party, are entitled to recover from the defendants the reasonable attorneys' fees they incurred in maintaining their procedural due process claim in this court.

IT IS FURTHER ORDERED that the parties shall meet on or before August 10, 1983, in an attempt to stipulate the amount of attorneys' fees to be awarded the plaintiffs. If the parties are unable to stipulate, they shall contact my chambers and a hearing on the award of attorneys' fee will be set on an expedited basis.